Once again, my name is Martin Crowley and I represent Dennis Denae, the plaintiff appellant. And the defendant is Richard Hill in the Airport Authority of Washoe County. The instruction said that the Denae was disruptive should have been given. This invaded the province of the jury to determine the questions of fact. I think it was a question of fact of whether or not Denae was disruptive at the airport board. It's not a question of law, although it's strongly argued by the defendant that that is a matter of law. And that's one of the issues we have to decide here. Wasn't it already decided in an earlier case? That he was disruptive as a matter of law? Yeah. I don't believe it was decided in that fashion. I mean, if you look at the opinion, it just says if he was disruptive and could be removed, but if his removal was based upon the retaliation for his prior comments, then the removal would be improper. That was the issue. Yeah. And when those issues got blended like that, it became very difficult, I think, in the minds of lawyers, let alone jury members who are asked to discern between, okay, we're told he's disruptive, but now we have to make a decision whether or not he was being removed because of what he said or because of whether or not he was disruptive. And I think the question should have been, was he disruptive enough for removal? Because the question on the disruption, remember, is Denae was accused of saying spit on it from the audience. Now, you can't hear any comment from Denae from the audience whatsoever when he's sitting there. Mr. Hill is the first one that you hear when he says, Mr. Denae, and he says it very loudly and he calls him up. He calls him up and he starts attacking him. Now, the so-called disruption would have been what he said to his neighbor about their spit on that piece of paper, which nobody heard apparently except Mr. Hill, but he said that he was he thought he was saying a rude comment about the person at the podium, and that's what he was chastising him for. And then they got into this argument with Denae said, I wasn't talking about the person at the podium. I was talking. Don't pick up my piece of paper because there was spit on it. And then. So there was this argument. And I guess that's a second disruption or that is a disruption because they're arguing. They just didn't resolve that that issue at that point. Isn't that the real disruption is the second one that is holding up the whole meeting to determine this argument about whether what he said in the audience was correct or not, that that's really why he was being ejected from it. Oh, yes. Judge, there's no question. Mr. Hill stated that he was ejecting Denae because he wasn't going to he wasn't going to resolve that right here and now he's I'm not going to have this argument with you here during this meeting. So you go sit down and you shut up or you get out. And he says, I'm not going to leave because he wanted an apology for being called out of his chair and being humiliated in front of everyone that way. And when he wouldn't, then that's a citizen that's serving and so forth, have the right to play his question. Sure. While the whole meeting is being held up, isn't that the kind of disruption that we're talking about? Well, I think the fashion that Hill went at it was the was the inappropriate part. If they had something to say in his own defense and he should have been allowed to speak in his own defense. But when he attempted to speak his defense, he'll said, you said spit on it. You know, and he started into an argument with him when he should have calmly and rationally ask him what it happened. But actually what he should have done and more appropriately, when there's noise in the meeting, what the chair usually does is it wraps a gavel or he says something to the effect of can we have quiet, please? Or something to that effect. If there's noise in the audience, he should say, can we have quiet, please? But he said he's calling the name out of the audience. Now, that's very unusual and out of order, because when somebody speaking in the audience, you don't see Mr. Hill calling their name and saying, be quiet back there. But with the name he does. And that's a very important issue in this case, because he's mad about Denae's comments at the podium when he says you're acting as a czar when you introduce these new rules here. The jury was there to determine whether or not Hill had violated Denae's rights on that day. And whether he was being disruptive that day, whether Hill had retaliated against Denae for his speech on that day. So why was the jury being allowed to see a montage of videos from several other days? The only purpose was to prejudice the plaintiff. If the jury thought that Denae was being simply sent out of the meeting for the argument or disruption, they probably thought, well, what's the big deal? Why are we even here? Why is there a trial? But that was the issue of the damages. They don't know what happened. Denae is a graduate of the United States Air Force Academy, retired as a lieutenant colonel, having served for 20 years in the United States Air Force, including a tour in Vietnam as a pilot. The indignity and slap in the face of hatred like that of being arrested and handcuffed and hauled off to jail is incredible. We can't say that he didn't suffer damage as a result of what happened on that day, but the jury has no idea that that happened because they were prevented from hearing that when he was dragged down the hall in handcuffs. They were prevented from hearing what precisely? Anything after his removal from the meeting. The video is all that they got. They've got him being pulled out of the meeting, but that's it. So they might have been sitting there thinking, well, what's the big deal? He was just made to leave. But I mean, what happened is they slapped the handcuffs on him and dragged him down the hall. And was the evidence of handcuffs and so on excluded? And you sought to introduce it? Yes. And that's one of the issues that we raised. We said that that was his damages because the defense argued there's no damage in this case. There's no damages. The plaintiff has suffered no damages. Now, that's not fair. That's not fair to tell the jury that there's no damages. And at the same time, we know that he's being prevented from saying I was dragged down the hall by two burly guys with handcuffs on behind my back. And I'm a decorated war veteran. I've never been arrested in my life. You know, this is a very humiliating event. Was there not a determination that that arrest was lawful? Was there a determination that it was lawful? No. And that's one of the defense arguments is that since that was stipulated, that the false arrest claims against the officers were dismissed. See, what we wanted to do is we wanted to get the officers out of there because it's not a good move to go to the jury on an officer case when they're just following orders. Well, but can you have it both ways, that the arrest was not unlawful, but you want to recover damages for it anyway? But, Judge, that would be the arrest, the actions on the part of the officers. The damages accruing from the arrest and incarceration against Mr. Hill, and that's what we wanted to get in with the jury because we didn't want the officers in there. We know that they were just following orders. And so that's why those claims were dismissed. And so the retaliation and having him ejected from the meeting and then subsequently arrested, those are the damages that we believe incur to the First Amendment retaliation claim. This may be cutting it too fine. And I'm well aware of the sort of psychological propensity of individual human beings, including jurors, to find liability on issues or based on issues that are not strictly relevant as a matter of law. So it's possible that the jury's liability determination might well have been influenced by their sense as to, well, where's the harm, when, in fact, they weren't asked where's the harm. They were asked, rather, what's the liability? But isn't it true that the liability question in terms of the amount of his – excuse me, the harm question in terms of the amount of his damages is distinct from the legal question that we're here to decide, which is to say liability? Yes, you're right on that issue. But that's why the other issues overlap. The prejudice of bringing in all these videos of other days when he had arguments with Hill and they were yelling at each other back and forth on these other days that were not relevant to this day in question. The jury sees that stuff and they say, you know, this guy's just an idiot. You know, he doesn't deserve anything. So they go zero liability on that. If we exclude those other videos and we stay on the one day where the fundamental rights were violated on that day, then the jury can fairly decide the issue of liability. And you're right. If we don't have liability, the damage is moot. But we've got to have a fair shot at liability and not be prejudiced as far as, you know, the jury is concerned. I'm kind of confused on the clock, though. Well, the clerk's office, in its wisdom and mysterious ways, gave you 10 minutes to decide on the first case and 20 minutes to decide on the second case. I think 20 minutes is more than you probably need, although take as much as you like. If you're at the point where you'd like to sit down here from the other side and then respond, that's fine. That would be an appropriate thing to do. Okay. I've got a couple of points I'd just jump into and then respond to those. One of the things in their briefs, Hill agrees that animosity arising from the earlier incidents is not relevant. That's page 34, lines 4 and 5. Then why did they show the selected videos? Other people in the room were standing. Hill ordered Diné to sit down. He's being told like he's a little child. This is personal on the part of Mr. Hill against Mr. Diné. Hill says that Diné's disruptive comments came like clockwork. You know, he does this on a regular basis. That's their arguments. Once again, they just want to prejudice the jury as to his conduct on other occasions, not that particular occasion, which is the only reason we were there. He was anxious to embarrass Diné and show him that Hill was the boss after he called him a czar at the public comment podium. I think that I'll reserve my time for a rebuttal. So we'll hear from the other side and then we'll give you a chance to respond. Thank you. Good morning. Thomas Beck on behalf of the Department of Public Affairs. Please support counsel. There are obviously three issues on appeal in this case. The first one is whether or not the district court committed reversible error when it ruled, as a matter of law, that Mr. Diné's conduct would justify his removal so long as that removal was not motivated by his prior speech. The second issue is whether or not the district judge committed reversible error when it precluded the plaintiff from offering evidence about the subsequent arrest and prosecution. And finally, the third claimed error is that the court committed error when it allowed the evidence of the prior interactions between Mr. Diné and Mr. Hill. Before I address these legal issues, I want to talk about a few critical facts that I think are very important to your determination here today. As was pointed out in the brief, Mr. Diné was someone who was there very frequently, in fact, had been to every single airport authority meeting since 1994, and readily admitted at trial that his goal was to get into the Guinness Book of World Records for having spoken at airport authority meetings or public meetings in total. During the airport authority meetings, every person is entitled to speak during public comment, because that's a provision that's provided by Nevada law. They're given three minutes. Mr. Diné was offered the opportunity, in fact, availed himself of that opportunity and went well beyond his three minutes. During the course of that discussion, as the district court ruled out initially in its order-granting summary judgment, made repeated derogatory personal comments about the board members and that he was extreme in his condemnation for the airport authority board members without any consequence whatsoever. Nothing happened to Mr. Diné during the period of time that he was making these really derogatory comments. It's only once he returned to the audience and spoke out of turn that any action was actually taken against him. While he was at the public comment podium, he also tore up and actually spit upon these rules of decorum that he felt had been improperly promulgated by the chairman, Mr. Hill, and spit on it. Again, he was not in any way stopped to do that. There is evidence in this case about prior appearances that Mr. Diné had made, and I'll talk more about that in the latter part of this, but I think it's important to note that those show that Mr. Diné very frequently came in there and was very derogatory towards the board members, and on not one occasion was any action ever taken against him. He was always free to go ahead and speak in any way that he wanted during that public comment portion. The videotape also showed that on occasion, after he left the podium and the public comment portion was over, he would go to the audience, and then he would attempt to heckle and interrupt other speakers who came before the board, and on those situations, then the videotape revealed this, that he was immediately stopped when he did that, and that's what happened on this occasion, September 14th of 2000. And this was an unusual trial in that both the jury and the district court and you all had the opportunity to actually see what happened. The entire matter was captured on videotape. Mr. Diné had completed his public comment and had returned to the audience. There was another member from the airport authority staff that had gotten up to speak during the course of that meeting, and that individual was speaking on the question of whether or not the airport authority was properly involved in an eminent domain proceeding to take certain properties around the airport, and this was an issue that was very near and dear to Mr. Diné's heart. Record reflects in the district court he talked about how he felt that they were stealing the land of these people. Well, when the staff member made a comment that the airport authority was doing everything possible to treat the property owners fairly, Mr. Hill, here's Mr. Diné say, the words spit on it. And Mr. Hill believed that what Mr. Diné was doing was, again, commenting in a negative way, out of order about the comment that had been made by the airport authority staff member. And so what Mr. Hill does, he said he called Mr. Diné's name, and what he said to him was that you made a comment that was unacceptable and it won't occur again or you're going to be ejected from the boardroom. So then Mr. Diné then jumps up and in his loud and aggressive manner says, what did I say? And Mr. Hill says, you said spit on it and it's not going to occur again. Well, then Mr. Diné goes on this tirade demanding that he issue an apology to admit that he was wrong. Mr. Hill simply says be seated. And he tells him three times, be seated. He warns him, if you're not seated, you're going to be ejected from this boardroom. And Mr. Diné continues on demanding that he be issued an apology. He calls Chairman Hill a liar and he demands an apology. And then the district court had this information well before it made its ruling on the jury instruction because all that information had been provided in the motion for summary judgment that he had previously granted. Mr. Diné at trial admitted that Chairman Hill had not told a lie. In fact, he admitted that what Chairman Hill reported him of saying was exactly what he had said. So there was no reason for Chairman Hill to admit that he was a liar. He didn't have to do anything. After he repeatedly warned him and Mr. Diné refused to sit down, that's when he asked that the sergeant at arms escort him from that boardroom, which ultimately happened. And you saw the videotape, I presume, and heard the things that had occurred during the course of that. Now, because we had this videotape of exactly what happened, we filed a motion for summary judgment based upon the prior Kent v. Santa Monica decision and asked the district court to determine as a matter of law that Mr. Diné was a disruption to the meeting and because he was a disruption to the meeting that these claims should be dismissed. The district court viewed that videotape, found that, in fact, Mr. Diné had been removed not because of anything that he had said during the public comment, but because of the disruption of the meeting, the court specifically noted that he had been repeatedly warned and that he ignored those warnings and it was only when he ignored those warnings was he removed from the meeting. This panel, this court reversed that summary judgment, finding that the, really, the issue of whether or not he was a disruption or not was immaterial because this was a, quote-unquote, retaliation claim in which the issue was whether or not Chairman Hill was motivated in his ejection of Mr. Diné because of Mr. Diné's prior comments from the public comment podium. Sent the case back for trial and, of course, it went to trial. We had a pretrial hearing in which the question was raised, how are we going to instruct the jury about this issue of whether there was a disruption and, you know, whether in fact there was a disruption, because in its decision, this, the panel from this panel, it said whether there was a disruption or not. It said that the issue is really kind of immaterial because the real issue is what was the motivation of Mr. Hill at the moment that he was removed from the boardroom. So he had this hearing with Judge McKibbin, and Judge McKibbin found in this, and what he says is that, and I'm just going to read you this, it's pretty brief. It says, the only thing is that what the Ninth Circuit did say, as I recall, is that under Kent case, which this Court had relied on in its prior decision, and according to the Ninth Circuit, I improperly relied on it, but they did say that under Kent, Diné's behavior after Hill accused him of, say, spit on it, may have been sufficiently disruptive to justify his ejection. By the use of the word may, I think they may have left the question open as to whether or not it was sufficiently disruptive. I think it's quite likely that I will give an instruction to the jury that the type of conduct that Mr. Diné engaged in was sufficiently disruptive to justify his ejection as long as the ejection was not for an improper purpose. That is, in retaliation for the statement that Mr. Diné said, which were protected statements earlier in the meeting. And this Court, in its prior decision, had found that Mr. Diné's speech from the podium was a protected speech. So that issue was no longer an issue to be decided. So Judge McKibben himself ultimately drafts the jury instruction that was given on this, and it was jury instruction seven. It's the instruction that they challenged. And they focus on one sentence in the decision or in the instruction, but you have to look at what Judge McKibben did as far as instructing the jury as a whole, because you have to look at the entire instruction. And he gave both sides of this dispute. I'm just going to read you a couple of sentences of this. Can I interject a little bit? We're pretty familiar with the record here. And while the clerk's office gave each side 20 minutes, I'm not sure this case really needs 20 minutes because we're pretty familiar with the record. And if you would maybe finish up in two or three minutes, I'm not going to be strict about it, but if you could get that sense of it, I would appreciate it. Okay. The point I think is very clear. Judge McKibben tells the jury. He gives them, you know, and let me just read this. It's very brief. Diné asserts that Hill ejected him from the meeting in order to retaliate against him for speaking out during the public comment portion of the meeting in opposition to the rules being proposed to regulate public comment. If Hill did eject Diné for that reason, then the injection was viewpoint discrimination and it was impermissible under the First Amendment. Hill asserts, however, that Diné was ejected because he was disrupting the meeting after he made this public comment. If this was Hill's motivation for ejecting Diné, then there was no viewpoint discrimination and the ejection was permissible under the First Amendment. Diné's behavior in confronting Hill was sufficiently disruptive to justify his ejection from the meeting, but only if Hill did not eject Diné because he expressed views hostile to Hill during the public comment portion of the meeting. That is precisely what this panel said what the case was about. And I think Judge McKibben's instruction was absolutely correct. So I think that by taking and drafting instruction that was based upon this Court's instruction, that's exactly what the Court was told to do. More importantly, if you really think about it, the issue of whether or not Mr. Diné was a disruption or not was absolutely immaterial. And when the Ninth Circuit issued its first decision, it said it doesn't really matter because the real issue was whether or not he was motivated by the prior protected speech. And that's precisely what Judge McKibben found on fair – found in his jury instruction. Moving on to this question of whether or not there was an error about the presentation of evidence regarding the arrest and prosecution, it's important to note, as Judge McKibben did, and I – and we have the transcript of the hearing on this issue, that when the – when the claims were dismissed, it wasn't a dismissal that was a voluntary dismissal. We filed a motion for summary judgment where we challenged the arrest and the prosecution claims. And rather than oppose that motion, they stipulated not to a dismissal but to the entry of judgment in favor of the airport authority and against the plaintiff on those claims. And so when this issue came to Judge McKibben in the hearing on it, he was very clear. He said, you know what, this is not a situation where there was just a dismissal. The airport authority won on these claims. And if I'm going to allow you to present evidence of the arrest and prosecution, I'm lawful. And he says, quite frankly, I think that's going to be more harmful to you. So what the plaintiff is really asking is the opportunity to go in and present evidence about an arrest and prosecution when they lost on that claim. How could that possibly be relevant when those claims were gone? And I think Judge McKibben was absolutely correct in that. And if he wasn't correct, he actually benefited the plaintiff by not having the jury told that he was properly arrested and prosecuted. There's one important thing I think you have to keep in mind here, and that is, is that when this claim was dismissed, it was very wise on their part, because I had had conversations with Mr. Crowley's co-counsel about the legal issues in this case. And we discussed how if the issue was whether or not there was a wrongful arrest or prosecution, the test was a purely objective one. If there was probable cause for the arrest or prosecution, that the defense would win as a matter of law. And Mr. Dickerson knew that when we filed this motion for summary judgment, the judge was going to look at this purely objectively and say, did it appear that this person was a disruption to the meeting? In a retaliation case where the alleged misconduct of the defendants is arrest as opposed to merely removal from the room, it's a purely objective test. The state of mind of the arresting officer is totally immaterial. And so he was aware that if those claims went forward, that they were going to lose on this objective test, and therefore, you know, it was going to be an easy argument. How in the world can the defendant be held responsible for having removed him from the building when they're not responsible for him having been arrested? So this was a very wise thing to do. Finally, this issue about the showing of the other videotape of the other events. Judge McKibbin, I think, properly ruled that it would be when the sole issue in this case is the state of mind or the motivation of Chairman Hill, you can't just take a little snippet and show the jury the snippet and say --" And do we review the admission of that evidence on abuse of discretion standard? Yes, you do. Thank you. Yes, you do. And he concluded, and we made the argument, this evidence is offered for multiple reasons. First off, it's offered to show that no one --" I mean, there were other instances where Mr. Dene was far more offensive to Chairman Hill. And Chairman Hill was polite. He never interrupted him. He never, you know, rejected him out of the room. He would thank him. He would, you know, appreciate your comments, whatever. Secondly, the videotape showed that when Mr. Dene would interrupt other people from the audience, he would immediately stop that comment. We're pretty familiar with the state of the record. Okay. The point being is that I think Judge McKibbin was absolutely correct when he allowed that other evidence. He gave very detailed cautionary instructions as to the purpose and the sole purpose for that evidence. And I think it would be impossible to say that he abused his discretion. Thank you very much. Thank you very much. Mr. Crowley. Very briefly. There's no way Dene's whisper can even be heard on the audio tape can be disruptive as a matter of law. So to say that he was disruptive of the meeting as a matter of law was inappropriate. But not hearing it on the audio tape is very different from not being heard in the room. And obviously Mr. Hill heard it. He was quite some distance away. Audio tape and recording devices often have very restrictive ranges and so on. Right. And then I still think it becomes a question of fact. Did he disrupt the meeting? It should be left to the jury, not to the district court. This issue he mentioned several times. He was asked to... That wasn't the disruption we're talking about. Yes. The disruption of the meeting was what occurred at the meeting. Yeah.  He's called out of his seat and then there's the argument. And I agree with you on that point, Judge Hugg. They mentioned the please be seated, please be seated. But one of the things that you note, and it's very difficult to miss it because it's right at the end of the tape, though, Dene sat down. They said that he was removed because he refused to follow the commands of Mr. Hill. If you look at the tape, right at the very end of it, Dene is seated. He does sit down. He's seated in his chair. When the officers physically pull him out of his chair and remove him from the meeting. So their argument that he refused to comply with the directive is absolutely immaterial because he was seated in his chair when he was taken from the meeting. You know, that being the case, I don't think it was appropriate for the district court to find, as a matter of law, that he was disrupted. He was back in his chair. He should have moved on with the meeting, but instead he wanted to make sure that he showed that he was the boss, he's in charge, and he's going to go forward with his ejection, bringing these armed officers forward and drag him out of the meeting in front of everybody on television. And by the way, they no longer videotape airport board meetings, and Dene is prohibited from bringing a video camera to those meetings. Okay. Thank you very much for useful arguments in both cases. The case of Dene v. Bard or Dene v. Washoe County is now submitted for decision.
judges: Hug, W. Fletcher, Holland